UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND ODESSA DIVISION

| | |
|---|---|
| IVANI, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>LEGRAND S.A.; LEGRAND NORTH AMERICA, LLC;  THE WATT STOPPER, INC.<br><br>*Defendants*. | Civil Action No. 25-cv-447<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Ivani, LLC ("Ivani") brings the following allegations and asserts the following claims against Defendants Legrand S.A., Legrand North America, LLC, and The Watt Stopper, Inc. ("collectively, Legrand") for Legrand's infringement of U.S. Patent Nos. 9,843,194 and 10,418,824.

## NATURE OF THE ACTION

1. This is an action for willful direct and indirect infringement of Ivani's U.S. Patent Nos. 9,843,194 ("the '194 Patent") and 10,418,824 ("the '824 Patent") (collectively the "Asserted Patents"), in violation of the Patent Act, 35 U.S.C. § 1 *et seq*., based on Legrand's unauthorized commercial making, use, offer for sale, sale, and importation of various Legrand master switches, remote switches, and controllers—including certain "kits" that sell the infringing switches and controllers as a unitary package.

## THE PARTIES

2. Plaintiff Ivani, LLC is a limited liability company incorporated under the laws of Delaware.  Ivani is an operating company whose industry-leading technology is backed by its

extensive patent portfolio, including over 100 granted patents, with additional patents pending. In addition to the mesh network technology in the Asserted Patents, Ivani is known for its sensify® technology, software/firmware that turns ordinary IoT devices (e.g., lights, outlets, hubs) into advanced occupancy sensors by analyzing RF disturbances across existing wireless networks

3.      Defendant Legrand S.A. is a *société anonyme* incorporated under the laws of France, registered with the Limoges Trade and Companies Register under number 758 501 001. Its registered office is located at 128 avenue du Maréchal de Lattre de Tassigny, 87000 Limoges, France.

4.      Defendant Legrand North America, LLC is a limited liability company organized and existing under the laws of Delaware. Legrand North America, LLC's headquarters is located at 60 Woodlawn Street, West Hartford, Connecticut, 06610.

5.      Defendant The Watt Stopper, Inc. is a corporation organized and existing under the laws of California. On information and belief, The Watt Stopper, Inc. has a regular and established place of business located at 2240 Campbell Creek Blvd. Suite No 110, Richardson, Texas 75082. On information and belief, The Watt Stopper, Inc. is a wholly owned operating subsidiary of Legrand S.A. Collectively, Legrand S.A; Legrand North America, LLC; and The Watt Stopper, Inc. may be referred to as "Legrand."

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § *1 et seq*.

7.     Personal jurisdiction is proper over Legrand because it has engaged in systematic and continuous business activities in Texas and in this District. Upon information and belief, Legrand has one or more regular and established places of business in Texas. The Watt Stopper, Inc. maintains a regular and established place of business in Texas at 2240 Campbell Creek Blvd. Suite No. 110, Richardson, Texas 75082. Further, Legrand has committed acts of patent infringement in this Texas and in this District, and, on information and belief, regularly conducts and solicits business in Texas and in this District.

8.     Venue is proper in this District under 28 U.S.C. § 1400(b) because Legrand has committed acts of patent infringement in this District and has a regular and established place of business in ths District.

9.     Venue is further proper as to Legrand S.A. under 28 U.S.C. § 1391(c)(3), because Legrand S.A. is not a resident of the United States and therefore may be sued in any judicial district.

## RELEVANT FACTUAL BACKGROUND

**A.     The Asserted Patents**

10.     On December 12, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,843,194 ("the '194 Patent"), entitled "Configurable Mesh Network for an Electrical Switching System." A true and correct copy of the '194 Patent is attached hereto as **Exhibit 1**.

11.     On September 17, 2019, the USPTO duly and legally issued U.S. Patent No. 10,418,824 ("the '824 Patent"), entitled "Configurable Mesh Network for an Electrical Switching System." A true and correct copy of the '824 Patent is attached hereto as **Exhibit 2**.

12.     The technology disclosed in the Asserted Patents relates to systems for a mesh network which can be used in conjunction with the existing electrical infrastructure in a building

to provide for additional control and functionality to devices utilizing the electrical infrastructure. Specifically, it relates to retrofitted or replacement electrical switches which can replace traditional switches and operate remotely through an internal wireless communication system or which can be used to create a new network from scratch.

13. By way of representative example, the '194 Patent claims a **master switch (Fig. 1)** configured to replace a traditional light switch, and a **remote switch (Fig. 2)**:



FIG. 1                    FIG. 2

14. The master switch includes a "first activation object"—such as a paddle or capacitive touch plate—that a user may interact with to adjust a physical switch on board the master switch. The physical switch—such as an SPDT relay—acts to provide electricity flow from existing electrical infrastructure.

15. The master switch additionally includes a network communication system that receives instructions from a network and provides them to a computer onboard the master

4

switch. Upon receipt of the instruction, the computer will adjust the configuration of the physical switch, thus allowing or disallowing electricity flow.

16.     The remote switch is separate and independent from the master switch and thus includes a *second* activation object.

17.     Like the master switch, the remote switch also includes a network communication system. The remote switch network communication system provides instructions to the master switch network upon activation of the second activation object. The instruction instructs the computer onboard the master switch to control the master switch's physical switch, thus allowing or disallowing electricity flow:



FIG. 4

18.     The technology disclosed in the Asserted Patents was not routine or conventional. The USPTO examined the patented technology and concluded that no prior art, alone or in combination, disclosed or rendered obvious any of the claims of the Asserted Patents.

19.     Ivani owns all rights, title, and interest in the Asserted Patents.

B.      **The Infringing Master Switches**

20.     Legrand makes, uses, offers for sale, sells, and imports multiple products that comprise a "master switch" under each of the Asserted Patents.

21.     For example, the WNRL50[1] includes a first activation object in the form of a paddle:



22.     The WNRL50 includes a physical switch configured to connect and disconnect an outlet to a power source:

---

[1] "WNRL50"—and similar alphanumeric strings referenced herein—is the product identifier Legrand utilizes to identify this particular master switch.

6



23. The WNRL50 includes a computer configured to control said physical switch. As shown below in orange, the WNRL50 includes a microcontroller (the Atmel® | SMART™ SAM R21) connected to the physical switch (shown in yellow). The microcontroller controls said physical switch via header pins (shown in purple):



24. The Atmel® | SMART™ SAM R21 is a series of low-power microcontrollers using the 32-bit ARM® Cortex®-M0+ processor with an integrated ultra-low power 2.4GHz ISM band transceiver. The transceiver is integrated into a computer and receives instructions from a network.

25. The WNRL50 computer will adjust a configuration of the physical switch upon receipt of an instruction from said first network communication system. For example, a user may adjust the physical switch via an isolated remote switch:



26.  Additionally, users may activate the first activation object of the master switch itself, thus causing the first computer to adjust a configuration of said physical switch:



27.  In addition to the WNRL50, Legrand makes, uses, offers for sale, sells, and imports various other products that comprise a "master switch" under the Asserted Patents. For example, at least the WNAL50, WNRL10, WNAL10, WNP10, WNP20, WNRR20, WNAR203, WNRR15, WNAR153 (collectively, the "Master Switch Products") are each a "master switch" under the Asserted Patents.

C.  **The Infringing Remote Switches**

28.  Legrand also makes, uses, offers for sale, sells, and imports multiple products that comprise a "remote switch" under the Asserted Patents.

9

29. For example, the WNRL23—a battery operated (wireless) remote switch— includes a second activation object:



30. The WNRL23 includes a network communication system configured to provide instructions to a master switch upon activation of the second activation object. For example, a user may activate the second activation object of the WNRL23, thus causing the computer onboard an associated master switch to adjust the configuration of a physical switch.

31. In addition to the WNRL23, Legrand makes, uses, offers for sale, sells, and imports various other products that comprise a "remote switch" under the Asserted Patents. For example, the WNAL23, WNRL63, WNAL63, 064875, WNRL24, WNAL24M WNRL64, WNAL64, WNAL33, WNRL33, WNAL43, WNRL43, WNACB40, WNRCB40, and 067695 products are each a "remote switch" under the Asserted Patents.

32.     Further, Legrand makes, uses, offers for sale, sells, and imports various "kits" that include a master switch *and* a remote switch. For example, the WNRH10KIT includes a master switch (green) and a remote switch (blue):



33.     In addition to WNRH10KIT, Legrand makes, uses, offers for sale, sells, and imports various other kits that include both a master and remote switch. For example, the WNAH10KIT, WNREZK10, WNREZK15, WNREZK50, WNRKH10, WNRH15KIT, WNRKH53, and WNRKH532 each include a "master switch" and a "remote switch."

D.     **Legrand's Willful Infringement**

34.     In or around June 2015, Ivani and Legrand engaged in business development conversations. On June 4, 2015, Ivani's Chief Marketing Officer emailed a Legrand Vice President, Mr. Peter Horton:

> I trust this message finds you well.  In an effort to share more relevant information with you without a signed NDA, we had an idea.  **We'd like to send you our utility**

11

**patent filing for your review**. There are technologies behind the patent that go further towards providing value not currently available on the market, and this can be saved for further discussions while under an NDA. That said, we would like to disclose it as "commercial in confidence," that is that it not be disclosed to 3rd parties outside of Legrand.

35. Mr. Horton responded:

**I am in agreement that this makes sense to continue our conversation**. I will keep this information in confidence and will advise where it is shared internally. In the short term, I will be the only one reviewing the information.

36. Thus, on June 12, 2015, Ivani's Chief Marketing Officer sent the '194 Patent application to Legrand, writing, "**Please find the utility patent filing attached**. I look forward to hearing your thoughts."

37. Following Ivani's initial correspondence with Legrand, Ivani executives attended several in-person meetings with Legrand personnel. For example, on November 10, 2016, Legrand's current CEO, Justin McKinney attended the "Eliot Event" in New York, New York. The following Legrand personnel attended the event: John Seldorff, Steve Schoffstall, Fritz Werder, Brian Dibella, Ken Ruh, and Mr. Peter Horton. The purpose of the Eliot Event was an unveiling of Legrand "smart ecosystem" as well as the partners they were working with at the time. Ivani was one of those partners.

38. During the Eliot Event, Mr. Mckinney introduced Ivani's "sensify" product to the aforementioned individuals. Today, Philips Hue owner, Signify, licenses the patented sensify technology that the Verge calls, "the tech that could turn millions of Zigbee light bulbs into motion sensors with a single update."

39. On July 25, 2017, Ivani executives met with Legrand in Legrand's Harrisburg, Connecticut office to further demonstrate sensify.

40. On October 12, 2017, Ivani executives met with Legrand at Legrand's international headquarters in Limoges, France. Ivani again demonstrated sensify.

41. On January 9, 2018, Ivani executives met with Legrand at the Consumer Electronics Show (commonly referred to as "CES") in Las Vegas, Nevada. Ivani again demonstrated sensify and discussed the future of sensify technology integrated into Legrand hardware. By this point, the '194 Patent had been issued. Ivani was a featured speaker in the Legrand booth at this show and met directly with the CEO of Legrand for ongoing business discussions.

42. On March 13, 2018, Ivani executives again met with Legrand in Legrand's Harrisburg, Connecticut office to discuss sensify.

43. And finally, on October 15, 2018, at Legrand's request, Ivani executives dropped off sensify demonstration kits at Legrand's international headquarters.

44. Thus, since at least 2015, Legrand has been aware of Ivani and its intellectual property.

## COUNT I

### Infringement of U.S. Patent No. 9,843,194

45. Ivani realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

46. Ivani owns all rights, title, and interest in the '194 Patent, entitled, "Configurable Mesh Network for an Electrical Switching System.

47. Legrand makes, uses, offers for sale, sells, and imports certain master switches (the "Infringing Master Switches") that comprise a "master switch" under each of the Asserted Patents, including the '194 Patent. For example, at least the WNRL50, WNAL50, WNRL10, WNAL10, WNP10, WNP20, WNRR20, WNAR203, WNRR15, WNAR153 products include a first activation object; a physical switch configured to connect and disconnect an outlet to a

power source; a computer configured to control said physical switch; and a network communication system configured to receive instructions from a network and provide them to said computer. Further, the computer onboard Infringing Master Switches will adjust a configuration of said physical switch upon receipt of an instruction from a network communication system or activation of said first activation object.

48.     The Infringing Master Switches have no substantial non-infringing use. They are designed and intended for use in practicing the invention claimed in the '194 Patent and are not staple articles suitable for substantial non-infringing use. By way of example, Legrand advertises that the WNRL50 should be "pair[ed] with a radiant Wireless Smart Dimmer with Netatmo [i.e., a remote switch] to gain easy 3-way control."

49.     Legrand has had notice of the '194 Patent since at least its issue date on December 12, 2017.

50.     Yet Legrand has been and is contributing to the infringement of the '194 Patent by selling or offering to sell the Infringing Master Switches knowing them to be specially made or adapted for practicing the invention of the '194 Patent and not a staple article suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

51.     Legrand makes, uses, offers for sale, sells, and imports certain remote switches (the "Infringing '194 Remote Switches") that comprise a "remote switch" under '194 Patent. For example, at least the, WNRL23, WNAL23, WNRL63, WNAL63, 064875, WNRL24, WNAL24M WNRL64, WNAL64, WNAL33, WNRL33, WNAL43, WNRL43, WNACB40, WNRCB40, and 067695 products include a second activation object; a network communication system configured to provide instructions; and no physical switch configured to connect and disconnect an outlet to a power source. Further, the network communication system on board

14

the Infringing '194 Remote Switches will provide an instruction to the network on the master switch upon activation of a second activation object—said instruction instructing the computer onboard the master switch to control the physical switch of the master switch.

52. The Infringing '194 Remote Switches have no substantial non-infringing use. They are designed and intended for use in practicing the patented invention of the '194 Patent and are not staple articles suitable for substantial non-infringing use. By way of example, Legrand advertises that customers should "[p]air this battery-operated smart light switch [WNRL23] with a radiant Smart Switch with Netatmo."

53. Legrand has had notice of the '194 Patent since at least its issue date on December 12, 2017.

54. Yet Legrand has been and is contributing to the infringement of the '194 Patent by selling or offering to sell the Infringing '194 Remote Switches knowing them to be specially made or adapted for practicing the invention of the '194 Patent and not a staple article suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

55. Legrand additionally makes, uses, offers for sale, sells, and imports "kits" that include a master switch *and* a remote switch. For example, Legrand sells at least the following Infringing Kits: WNAH10KIT, WNREZK10, WNREZK15, WNREZK50, WNRKH10, WNRH15KIT, WNRKH53, and WNRKH532.

56. The Infringing Kits practice each limitation of claim 1 of the '194 Patent and thus directly infringe the '194 Patent.

57. Legrand's direct infringement has been, and continues to be knowing, intentional, and willful.

58.     Legrand also knowingly and intentionally induces infringement of claims of the '194 Patent in violation of 35 U.S.C. § 271(b). Legrand has had knowledge of the '194 Patent and the infringing nature of the Infringing Kits since at least as the Patent's issue date on December 12, 2017. Despite this knowledge of the '194 Patent, Legrand continues to actively encourage and instruct its customers and end users (for example, through online instruction materials on its website) to use the Infringing Kits in ways that directly infringe the '194 Patent. Legrand does so, knowing and intending that its customers and end users will commit these infringing acts. Legrand also continues to make, use, offers for sale, sell, and import the Infringing Kits, despite its knowledge of the '194 Patent, thereby specifically intending for and inducing its customers to infringe the '194 Patent through the customers' normal and customary use of the Infringing Kits.

## COUNT II

### Infringement of U.S. Patent No. 10,418,824

59.     Ivani realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

60.     Ivani owns all rights, title, and interest in the '824 Patent, entitled, "Configurable Mesh Network for an Electrical Switching System.

61.     Legrand makes, uses, offers for sale, sells, and imports certain master switches (the "Infringing Master Switches") that comprise a "master switch" under each of the Asserted Patent, including the '824 Patent. For example, at least the WNRL50, WNAL50, WNRL10, WNAL10, WNP10, WNP20, WNRR20, WNAR203, WNRR15, and the WNAR153 products include a first activation object; a physical switch; a computer configured to control said physical switch; and a network communication system configured to receive instructions from a network

and provide them to said computer. Further, the computers on board Infringing Master Switches will adjust a configuration of said physical switch upon receipt of an instruction from said first network communication system or activation of said first activation object.

62. The Infringing Master Switches have no substantial non-infringing use. They are designed and intended for use in practicing the invention claimed in the '824 Patent and are not staple articles suitable for substantial non-infringing use. By way of example, Legrand advertises that the WNRL50 should be "pair[ed] with a radiant Wireless Smart Dimmer with Netatmo [i.e., remote switch] to gain easy 3-way control."

63. Legrand has had notice of the '194 Patent since at least its issue date on December 12, 2017. The '824 Patent is a continuation of the '194 Patent. Thus, on information and belief, Legrand has had notice of the '824 Patent since at least its issue date on September 17, 2019.

64. Yet Legrand has been and is contributing to the infringement of the '824 Patent by selling or offering to sell the Infringing Master Switches knowing them to be specially made or adapted for practicing the invention of the '824 Patent and not a staple article suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

65. Legrand makes, uses, offers for sale, sells, and imports certain remote switches (the "Infringing '824 Remote Switches") that comprise a "remote switch" under '824 Patent. For example, at least the, WNRL23, WNAL23, WNRL63, WNAL63, 064875, WNRL24, WNAL24, WNRL64, WNAL64, WNAL33, WNRL33, WNAL43, WNRL43, WNACB40, WNRCB40, 067695, WNAL10, WNAL50, WNRL10, and WNRL50 products include a second activation object; and a network communication system configured to provide instructions. Further, the network communication systems on board the Infringing '824 Remote Switches will

17

provide an instruction to said network upon activation of said second activation object, said instruction instructing said first computer to control said physical switch of said master switch.

66. The Infringing '824 Remote Switches have no substantial non-infringing use. They are designed and intended for use in practicing the patented invention of the '824 Patent and are not staple articles suitable for substantial non-infringing use. By way of example, Legrand advertises that customers should "[p]air this battery-operated smart light switch [WNRL23] with a radiant Smart Switch with Netatmo."

67. Legrand has had notice of the '194 Patent since at least its issue date on December 12, 2017. The '824 Patent is a continuation of the '194 Patent. Thus, on information and belief, Legrand has had notice of the '824 Patent since at least its issue date on September 17, 2019.

68. Yet Legrand has been and is contributing to the infringement of the '824 Patent by selling or offering to sell the Infringing '824 Remote Switches knowing them to be specially made or adapted for practicing the invention of the '824 Patent and not a staple article suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

69. Legrand additionally makes, uses, offers for sale, sells, and imports "kits" that include a master switch *and* a remote switch. For example, Legrand sells at least the following Infringing Kits: WNAH10KIT, WNREZK10, WNREZK15, WNREZK50, WNRKH10, WNRH10KIT, WNRH15KIT, WNRKH53, and WNRKH532.

70. The Infringing Kits practice each limitation of claim 1 of the '824 Patent and thus directly infringe the '824 Patent.

71. Legrand's direct infringement has been, and continues to be knowing, intentional, and willful.

72. Legrand also knowingly and intentionally induces infringement of claims of the '824 Patent in violation of 35 U.S.C. § 271(b). On information and belief, Legrand has had knowledge of the '824 Patent and the infringing nature of the Infringing Kits since at least as early the Patent's issue date on September 17, 2019. Despite this knowledge of the '824 Patent, Legrand continues to actively encourage and instruct its customers and end users (for example, through online instruction materials on its website) to use the Infringing Kits in ways that directly infringe the '824 Patent. Legrand does so, knowing and intending that its customers and end users will commit these infringing acts. Legrand also continues to make, use, offer for sale, sell, and import the Infringing Kits, despite its knowledge of the '824 Patent, thereby specifically intending for and inducing its customers to infringe the '824 Patent through the customers' normal and customary use of the Infringing Kits.

## **PRAYER FOR RELIEF**

WHEREFORE, Ivani respectfully requests that this Court enter:

a. A judgment in favor of Ivani that Legrand has directly infringed, actively induced infringement, and contributorily infringed each of the Asserted Patents, in violation of 35 U.S.C. § 271(a), (b), and (c).

b. A permanent injunction prohibiting Legrand from further acts of infringement of each of the Asserted Patents;

c. A judgment and order requiring Legrand to pay Ivani its damages, costs, expenses, and pre-judgment and post-judgment interest for its infringement of each of the Asserted Patents;

d. A judgement and order that the damages award be increased up to three times the actual amount assessed, under 35 U.S.C. § 284 due to Legrand's willful infringement of each of the Asserted Patents;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Ivani its reasonable attorneys' fees against Legrand; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Ivani requests a jury trial on all issues so triable.

Dated: October 2, 2025                              Respectfully submitted,

*/s/David L. Hecht*
David L. Hecht **(Lead Counsel)**
dhecht@hechtpartners.com
J. Tanner Murphy (*pro hac vice* forthcoming)
tmurphy@hechtpartners.com
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821

*Counsel for Plaintiff Ivani, LLC*